UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| ROGER WALDNER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) Civil No. 1:13-CV-00032 (RCL) | |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is the government's motion to dismiss, or alternatively, the government's motion for summary judgment on plaintiff Roger Waldner's compliant brought pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Waldner filed a complaint alleging that the Department of Justice (DOJ) failed to comply with his FOIA requests and requested the Court enjoin the government to comply with its obligation under FOIA, or enter a declaratory judgment that the government at no time had the documents requested by Waldner. For the reasons stated below, the government's motion to dismiss will be DENIED, but the government's motion for summary judgment will be GRANTED.

I.     BACKGROUND

On June 27, 2011, Waldner filed a FOIA request with the DOJ, seeking the production of three types of documents regarding Solace Transfer Corporation, an Illinois corporation. One day later, Waldner filed an additional FOIA request with the DOJ, seeking the production of seven types of documents related to Nationwide Cartage Company, an Iowa corporation. All of

1

the requested documents related to a criminal case where Waldner accepted a plea agreement, and were aimed at obtaining documents allegedly alluded to during those negotiations.

In response to Waldner's FOIA requests, the Executive Office of the U.S. Attorneys (EOUSA) issued a letter of acknowledgement of Waldner's June 28, 2011 request on August 17, 2011. Similarly, EOUSA issued a letter of acknowledgement for the June 27, 2011 request on August 19, 2011. EOUSA then sent both of Waldner's requests to the U.S. Attorneys' Office (USAO) in the Northern District of Iowa for processing on August 26, 2011 and August 31, 2011. Employees at the USAO conducted searches for the requested documents on September 1, 2011, September 15, 2011, and January 19, 2012. Additionally, email requests were sent to all permanent employees in the office, detailed searches of various databases were conducted, and manual files searches occurred.

In the meantime, Waldner sent a letter to the Office of Information Policy (OIP) dated September 4, 2011 requesting an expedited appeal of his FOIA requests for the alleged failure of EOUSA to respond to his requests. Waldner alleged that the lack of response constituted a constructive denial by the DOJ.

On September 26, 201, EOUSA provided Waldner with all documents responsive to his June 27, 2011 request. Then, nearly a year later, on September 24, 2012, Waldner received the documents in response to his June 28, 2011 request. Upon receiving the documents from EOUSA, Waldner—believing administrative appeal to be futile, his remedies to be exhausted, and the produced documents to be unresponsive—filed a pro se complaint on January 7, 2013.

## II. DISCUSSION

### A. Motion to Dismiss for Failure to Exhaust Administrative Remedies

Under 5 U.S.C. § 552(a)(4)(B), when a FOIA requester properly exhausts his administrative remedies, he may file a civil action challenging the agency's response to his request. 5 U.S.C. § 552(a)(4)(B). "'Exhaustion of administrative remedies is generally required before filing in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Hildalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C Cir. 1990)).

Under the principle of constructive exhaustion, "[a]ny person making a request to any agency for records under [5 U.S.C. §§ 552(a)(1)–(3)] shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i). The applicable time limits are found in 5 U.S.C. § 552(a)(6)(A)(i), and they require the agency to make a determination "within 20 days . . . after the receipt of any [FOIA] request whether to comply with such request" and "immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination." *Id.*; *see also Oglesby*, 920 F.2d at 65.

While "[c]onstructive exhaustion is not intended to supplant the agency's authority under the FOIA with premature judicial oversight," here, the government's lack of a response within the 20 days required under the statute, means that judicial oversight is not premature. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 839 F. Supp. 2d 17, 24 (D.D.C. 2011). "Constructive exhaustion in the FOIA is a privilege granted only to individuals whose requests

for records have essentially been ignored by the agency, and it is a privilege reserved for a situation in which agency neglect has resulted in a 'fail[ure] to comply with the applicable time limit provisions of' 5 U.S.C. § 552(a)(6)." *Nat'l Sec. Counselors v. C.I.A.*, __ F. Supp. 2d __, 2013 WL 1141768, *14 (D.D.C. Mar. 20, 2013).

Had the government sent its response letters to Waldner's June 27, 2011 and June 28, 2011 requests prior to August 17, 2011 and August 19, 2011—within 20 days after the receipt of the requests—the government would have foreclosed constructive exhaustion and triggered the requirement that Waldner file an administrative appeal before proceeding to federal court. That did not happen here, and as such, the Court considers Waldner to have constructively exhausted administrative remedies under FOIA. Defendant's motion to dismiss is denied.

### B. Motion for Summary Judgment as Defendant's Search Was Reasonable

Having concluded that Waldner satisfied the constructive exhaustion privilege and was free to file suit in federal court, the Court now turns to the government's motion for summary judgment. Summary judgment is appropriate when the pleadings and evidence demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see generally Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). All justifiable inferences are to be drawn in favor of the non-moving party, as the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248; *Anderson*, 477 U.S. at 255. "The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other

competent evidence setting forth specific facts showing that there is a genuine issue for trial." *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 479 F. Supp. 2d 136, 140 (D.D.C. 2007).

FOIA requires that an agency undertake a search "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "[R]easonably calculated" means "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) (internal citations omitted).

"To merit summary judgment on the adequacy of a search, an 'agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'" *Id.* (quoting *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995)). Adequacy and reasonableness turn not on the yield of the search, but on the "appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (internal citation omitted).

Here, DOJ demonstrated through affidavits that its search met this standard. Debra Nash at the USAO in the Northern District of Iowa coordinated the searches for both of Waldner's requests. She submitted an affidavit explaining that in regards to Waldner's June 28, 2011 request, she sent out an email to all permanent employees in the office, including all staff of the Civil and Criminal Divisions, inquiring about documents that anyone in the office might have to respond to the request. She appointed a Paralegal Specialist, Maureen Oviatt, to conduct a search for responsive documents on the office IPRO database—a program used to scan and store documents obtained during discovery—using key search terms. Further, Oviatt conducted a manual search of document files for Waldner's case.

In regards to Waldner's June 27, 2011 request, Nash again contacted Paralegal Specialist Oviatt and Assistant U.S. Attorney C.J. Williams, as they were the employees who worked on Waldner's criminal case. Nash sent Williams and Oviatt the request and asked if anyone other than the two of them might have responsive documents. Additionally, Nash searched the office case tracking database, Legal Information Network Systems or "LIONS," to determine if anyone else might possess responsive documents. When Williams and Oviatt responded to Nash with responsive documents, Nash asked Oviatt to complete the search process for Waldner's June 27, 2011 request. Oviatt agreed, and searched the IPRO system to look for responsive documents using key, identified search terms. Oviatt again manually searched the case files for Waldner's case and retrieved all responsive documents. All responsive documents for the June 27 and June 28, 2011 requests were sent to EOUSA, and eventually sent to Waldner.

A requester's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). Diligence in the search preserves the integrity of the search and allows for a grant of summary judgment. *See Twist v. Gonzales*, 171 F. App'x 855, 855 (D.C. Cir. 2005); *Burnes v. C.I.A.*, CIV. A. 05-242 (GK), 2005 WL 3275895, at *2 (D.D.C. Sept. 14, 2005).

After assessing the adequacy of the searches, the Court holds that the government demonstrated that it used appropriate methods and diligence in searching for Waldner's requested documents. In fact, Waldner even conceded that the government conducted its search using appropriate methods and in a manner reasonably calculated to produce the information he requested. Pl.'s Mot. & Opp'n 5, ECF No. 8. This ends the inquiry. Whether Waldner believed the government had more documents or the exact documents he requested based on

conversations leading to his plea agreement is not the standard by which to determine whether the government has satisfied its FOIA obligations. This Court believes—and Waldner concedes—that the government met the requisite standard in responding to Waldner's FOIA requests.

Further, the government is entitled to a rebuttable presumption of good faith in conducting the search. The plaintiff bears the burden of demonstrating that the defendant acted in bad faith by failing to produce documents the plaintiff believes once existed, or that the search was inadequate. *See generally Wilson v. DEA*, 414 F. Supp. 2d 5, 12 (D.D.C. 2006). Waldner has not sufficiently rebutted that presumption by merely putting forth unsupported allegations that the government should have found a document. As this court has stated, "an agency failure to find a particular document does not undermine the determination that the search was adequate." *Burnes*, 2005 WL 3275895, at *2.

For these reasons, the Court holds that the government met the standard of conducting an adequate search pursuant to Waldner's FOIA requests, and Waldner failed to rebut the presumption of good faith in the government's efforts. As such, Waldner's requested relief is denied, and defendant's motion for summary is granted.

A separate Order consistent with this Memorandum Opinion shall issue this date.